Filed 1/23/25  P. v. Villalobos CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B332913 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA060525) |
| v. | |
| MARCOS VILLALOBOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

Esther R. Sorkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

In 2003, a jury found defendant Marcos Villalobos guilty of first degree murder. Villalobos now appeals from an order denying his petition for resentencing under Penal Code section 1170.95 at the prima facie stage.[1] Although the jury was not instructed on any now-abrogated theory of liability, Villalobos argues that the jury may have convicted him under a theory of imputed malice or using the natural and probable consequences doctrine. We find the record conclusively establishes Villalobos's ineligibility for resentencing and affirm the trial court's denial of his petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Underlying Offense[2]*

One evening in December 2002, Villalobos was at a house party in La Puente, California. Mark Fernandez, Richard

---

[1]    All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We therefore refer to the statute as section 1172.6 for the remainder of this opinion.

[2]    We derive our factual and procedural background of this case from the nonpublished opinion affirming Villalobos's judgment of conviction, *People v. Fernandez et al.* (June 16, 2005, B175279) (*Fernandez*). (See *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*) [appellate opinion generally part of record of conviction as applied to § 1172.6 proceedings].) However, "we need not credit the truth of any fact" to decide this appeal. (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1167, review granted May 1, 2024, S284232.) We reference the factual portion

Menchaca, and Rosalie Alvarez were also there. At some point, "Villalobos called to Menchaca and they all had a conversation. Alvarez entered her car to leave but Villalobos told her to wait. Alvarez complied because she liked Villalobos and he 'was telling everybody what to do.' Villalobos told Menchaca and Fernandez to get into the car . . . . [¶] Menchaca and Fernandez got into the back seat and Villalobos sat in the front passenger seat. Villalobos directed Alvarez where to drive and instructed her to make a U-turn on a residential street and then stop . . . . Villalobos exited the car, pulled the front seat forward and told Fernandez and Menchaca to exit. As Menchaca was halfway out the car door, Villalobos nudged Fernandez and said, 'Do it, do it.' Fernandez produced a large revolver, put the gun barrel in contact with Menchaca's chest and shot him twice."

"Two or three weeks prior to his death, Menchaca told [a friend] he was upset because he found out [the mother of his child] had been seeing Fernandez. Later that same day, Fernandez told [the same friend] he was going to kill Menchaca."

"Rama and Blackwood are cliques of the Puente gang . . . . The Blackwood and Rama cliques are strongly aligned and members of these cliques might commit crimes together . . . ." "Fernandez was a member of Blackwood . . . . Menchaca associated with members of Blackwood but was not a member of the gang. Villalobos and Miller were members of Rama."

---

only "for background purposes and to provide context for the parties' arguments." *People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) To the extent necessary to render our decision, we consider the procedural history of Villalobos's prior appeal, as permitted by the statute. (§ 1172.6, subd. (d)(3).)

One of Menchaca's neighbors saw him "make Blackwood gang hand signs . . . ." However, "[a]lthough Menchaca appears in group photographs . . . found in Villalobos's home, Menchaca does not throw gang signs like the other individuals in the pictures." A gang expert "testified it would be disrespectful for an individual who is not a member of a gang to make gang hand signs . . . . If an individual who was not a member of the gang flashed hand signs, the gang likely would 'put him in check,' " meaning the gang would yell at, beat up, or even kill the individual. "Gang members would earn respect for the gang by disciplining an individual who falsely had claimed to be a member of the gang."

### The Charges and Conviction

In May 2003, the People charged Villalobos and Fernandez with murdering Menchaca. (§ 187, subd. (a).) No other crimes were charged in the information. The information alleged that Villalobos and Fernandez intentionally killed Menchaca by means of lying in wait (§ 190.2, subd. (a)(15)), that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and that a principal personally discharged a firearm causing death (§ 12022.53, subds. (d) & (e)(1)).[3]

At trial, the court instructed the jury on principals and aiding and abetting liability. (CALJIC Nos. 3.00, 3.01.) The jury was instructed that Villalobos was accused of committing murder, i.e., killing another human being with malice aforethought (CALJIC No. 8.10), and on express and implied

---

[3] The information included other allegations, mostly different variations of firearm enhancements, as well as allegations regarding appellant's prior felony convictions, which we omit as not pertinent to this appeal.

4

malice (CALJIC No. 8.11).  The court further instructed the jury on two types of first degree murder—willful, deliberate, and premeditated murder with express malice aforethought (CALJIC No. 8.20) and lying-in-wait murder (CALJIC No. 8.25)—and unpremeditated second degree murder (CALJIC No. 8.30).  The jury was also instructed that if it found Villalobos guilty of first degree murder, it must then determine whether the lying-in-wait special circumstance was true, i.e., whether Villalobos "intentionally killed the victim . . . by means of lying in wait." (CALJIC Nos. 8.80.1, 8.81.15.1.)

The jury was further instructed that it must "decide separately whether each of the defendants is guilty or not guilty" (CALJIC No. 17.00) and "decide separately as to each of the defendants the existence or nonexistence of each special circumstance alleged in this case" (CALJIC No. 8.80.1).

In October 2003, a jury convicted Villalobos and Fernandez of first degree murder and found true the special circumstance allegation that Villalobos intentionally killed the victim by means of lying in wait.  As to Villalobos, the jury also found true that a principal used a firearm in committing the murder.

The trial court sentenced Villalobos to a state prison term of life without the possibility of parole plus 80 years to life. Villalobos and Fernandez appealed the judgments entered after their first degree murder convictions.  This court modified the judgment as to Villalobos to reduce the enhancement for personal discharge of a firearm by a principal causing death from 75 years to life to 25 years to life in state prison.  This court also struck a $200 parole revocation fine, but affirmed the judgment in all other respects.  (*Fernandez*, *supra*, B175279.)

5

### *Villalobos's Petition for Resentencing*

In May 2022, Villalobos filed a pro per petition for resentencing under section 1172.6 alleging he could not presently be convicted of murder because of changes to sections 188 and 189. The trial court appointed counsel for Villalobos.

The People's opposition to the petition argued that Villalobos was ineligible for resentencing because the jury was not instructed on a now-invalid theory of liability. The opposition attached the jury instructions and verdict form. Villalobos filed "additional information" or "argument" at some point before the hearing, but no reply is included in the appellate record.

In July 2023, the trial court held a hearing on Villalobos's petition. Villalobos appeared in person and was represented by counsel. Villalobos acknowledged that the jury was not instructed on any theory of imputed malice, but nonetheless argued that he established a prima facie case of eligibility for resentencing because "he was not the actual shooter but was convicted apparently as an aider and abettor." The People argued that Villalobos was ineligible for resentencing because he was found guilty as an aider and abettor and because the jury found true, through the lying-in-wait special circumstance, that he intended to kill the victim. The court concluded Villalobos was not entitled to relief under section 1172.6 "based on the totality of the circumstances" and denied the petition.

Villalobos timely appealed.

## DISCUSSION

### I.  Senate Bill Nos. 1437 and 775 and Section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and

6

limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *Lewis, supra*, 11 Cal.5th at p. 957.) The bill amended section 188 by adding the requirement that, outside of felony murder, "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Among other things, Senate Bill No. 775 expanded Senate Bill No. 1437's mandate by eliminating any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" as a means of finding a defendant guilty of murder. (§ 1172.6, subd. (a).) However, a principal in a murder or attempted murder, including an aider or abettor, can still be criminally liable if found to personally possess express or implied malice aforethought. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639–640.)

Taken together, Senate Bill Nos. 1437 and 775 created a procedure, now codified at section 1172.6, to allow a person convicted of murder under the former law to seek resentencing if the person could no longer be convicted under amended section 188. (*Lewis, supra*, 11 Cal.5th at p. 959.) A defendant starts the procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law. (*Strong, supra*, 13 Cal.5th at p. 708.) "After the parties have had an opportunity to submit briefings," the statute requires the court to "hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

7

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid.*) Courts may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at pp. 971–972.) However, "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong, supra,* 13 Cal.5th at p. 708.)

"We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief." (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465.)

## II. Villalobos Is Ineligible for Resentencing Relief as a Matter of Law Because He Was Not Convicted Under Any Abrogated Theory of Liability

Senate Bill Nos. 1437 and 775 narrowed the scope of felony murder and eliminated the natural and probable consequences doctrine and other forms of imputed malice as a basis for finding a defendant guilty of murder. However, "a defendant may still be liable for murder as a direct aider and abettor because a direct aider and abettor must possess malice aforethought." (*People v. Lopez* (2024) 99 Cal.App.5th 1242, 1248 (*Lopez*); *People v. Jenkins* (2021) 70 Cal.App.5th 924, 931 (*Jenkins*) [same].) Accordingly, Villalobos was eligible for relief only if he established that the jury might have convicted him under the felony murder doctrine,

8

the natural and probable consequences doctrine, or some other theory of imputed malice, and not as a direct aider and abettor who personally harbored malice.

## A. The record of conviction conclusively establishes the jury convicted Villalobos of attempted murder as a direct aider and abettor who intended to kill the victim

The People charged Villalobos and Fernandez with first degree murder. Villalobos and the People agree that Villalobos was prosecuted and convicted as an aider and abettor.

CALJIC No. 3.00 instructed the jury that "principals" of a crime are equally guilty and include direct perpetrators as well as "[t]hose who aid and abet the commission [or attempted commission] of the crime." The trial court also instructed the jury with CALJIC No. 3.01, which explained that to convict Villalobos of aiding and abetting a crime, the jury had to find that he aided, promoted, encouraged, or instigated the commission of the crime "(1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime . . . ."

As to "the crime," the jury was instructed that Villalobos was accused of committing murder, i.e., killing another human being with malice aforethought. (CALJIC No. 8.10.) The jury was not instructed on felony murder, the natural and probable consequences doctrine, or any other theory of imputed malice.

The jury convicted Villalobos of first degree murder, and found true the special circumstance that he "intentionally killed the victim . . . ." We presume the jury understood and followed the court's instructions in reaching this verdict. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 (*Sanchez*).) The record of

9

conviction therefore establishes that the jury convicted Villalobos as a direct aider and abettor who acted with express malice aforethought.  He is ineligible for resentencing as a matter of law. (*Lopez*, *supra*, 99 Cal.App.5th at p. 1248; *Jenkins*, *supra*, 70 Cal.App.5th at p. 931.)

> **B.** **The record of conviction does not permit the conclusion that the jury could find Villalobos guilty based on any now-invalid theory**

Villalobos concedes the jury was not instructed on felony murder or the natural and probable consequences doctrine.  He nonetheless argues that the instructions permitted the jury to convict him of murder under a theory of imputed malice.  We disagree.

As a threshold matter, even if the instructions left open the possibility that the jury imputed malice to Villalobos, he would not be eligible for resentencing.  When Villalobos was convicted, "a direct aider and abettor could not be convicted of lying-in-wait murder on an imputed malice theory," and the changes to sections 188 and 189 did not affect this rule.[4]  (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935, citing *People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)  Thus, even if the jury may have imputed malice to Villalobos, this would not establish that he "could not presently be convicted of murder or attempted

---

[4]     Although the jury in this case was instructed on two theories of first degree murder, its true finding on the lying-in-wait special circumstance reflects that the jury convicted Villalobos as an aider and abettor of lying-in-wait murder. (*People v. Moon* (2005) 37 Cal.4th 1, 22 [where "the evidence supports the [lying-in-wait] special circumstance, it necessarily supports the [lying-in-wait] theory of first degree murder"].)

murder *because of* changes to Section 188 or 189." (§ 1172.6, subd. (a)(3), italics added.) What Villalobos "is really arguing is that the instructions 'may have misled the jury as to what was *then* required to convict [him].' " (*Berry-Vierwinden*, at p. 935.) "This amounts to 'a routine claim of instructional error' that 'could have been raised on appeal from the judgment of conviction.' [Citation.] 'Section 1172.6 does not create a right to a second appeal, and [the defendant] cannot use it to resurrect a claim that should have been raised in his [direct] appeal.' " (*Id.* at pp. 935–936.)

Moreover, even if relief were available to Villalobos, we would reject his claim that the jury may have relied on any theory of imputed malice. Villalobos relies primarily on *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), which we find distinguishable. In *Maldonado*, the appellate court concluded that the jury may have imputed malice to the defendant based on the interaction between the instructions on aiding and abetting and lying-in-wait murder, and reversed the denial of the petition at the prima facie stage.[5] (*Id.* at pp. 1262–

---

[5]      Specifically, the appellate court recognized that first degree lying-in-wait murder, on which the jury was instructed, did not require intent to kill. (*Maldonado*, *supra*, 87 Cal.App.5th at pp. 1262–1263.) It also recognized that the jury was instructed that an aider and abettor " 'knows the perpetrator's unlawful purpose' " and intends to aid " 'the perpetrator's commission of that crime.' " (*Id.* at p. 1266.) Combining these instructions, the appellate court reasoned that "the jury may have found the perpetrator's *purpose* was only to injure or intimidate the victim in a surprise attack," and that it "could have construed the instructions such that, 'to be guilty as an aider and abettor of [lying-in-wait first degree] murder, appellant need only have

11

1263.) However, as Villalobos recognizes, the jury in *Maldonado* found *not true* the special circumstance lying-in-wait allegation, meaning "it did not necessarily find appellant intended to kill the victim." (*Id*. at p. 1262, fn. 3.) In contrast, the jury in this case found true that same special circumstance allegation, meaning it *did* necessarily find that Villalobos intended to kill, i.e., that he harbored express malice.

Villalobos contends that the jury's special circumstance finding should not foreclose his eligibility for resentencing, citing *People v. Campbell* (2023) 98 Cal.App.5th 350. *Campbell* is also inapposite. There, four defendants were jointly convicted of first degree murder and the jury found true, in connection with two special circumstance allegations, that each defendant intended to kill. (*Id*. at p. 358.) The jury was instructed on the natural and probable causes doctrine and was further instructed regarding the target offense of assault with a firearm. (*Id*. at p. 369.) Notwithstanding the special circumstance findings, the appellate court reasoned that the natural and probable causes instruction permitted the jury to convict one or more defendants by finding that they intended to aid and abet an assault whose natural and probable consequence was death, i.e., under the natural and probable consequences doctrine. (*Id*. at p. 370.) Yet, where, as here, "the jury did not receive an instruction on the natural and

_____

intended to encourage . . . [a surprise attack on the victim]—whether or not appellant intended to aid or encourage [the victim's] killing . . . .' " (*Ibid*.) The court therefore concluded that the jury "could have reasonably construed the instructions in a manner permitting it to convict appellant under a theory of imputed malice." (*Id*. at p. 1267.) Because we find *Maldonado* distinguishable for the reasons discussed *post*, we need not address whether its reasoning might apply in this case.

probable consequences doctrine, the jury could not have convicted the defendant on that basis . . . ." (*People v. Offley* (2020) 48 Cal.App.5th 588, 599.)[6]

Villalobos also argues that the jury instructions may have allowed the jury to impute malice to him in resolving the special circumstance allegation. Specifically, he notes that CALJIC No. 4.21 mentioned that "a specific intent or mental state" was a required element of murder and the gang special circumstance, and that CALJIC Nos. 3.31 and 3.31.5 note that murder requires "a certain mental state in the mind of the perpetrator." Villalobos claims these instructions implied that the jury could find the special circumstance true as to him without making any finding as to his intent to kill. Villalobos's selective recitation of certain instructions ignores the plain language of CALJIC No. 8.81.15.1, which clearly and correctly required the jury to find that "the defendant" (defined in CALJIC No. 1.11 as applying "to each defendant") "intentionally killed the victim" to find the lying-in-wait special circumstance true. (*People v. Superior Court (Bradway)* (2003) 105 Cal.App.4th 297, 309 [the lying-in-wait special circumstance "requires the specific intent to kill"].) This instruction was reiterated by the verdict form, in which the jury found true that "Villalobos . . . intentionally killed the victim by . . . lying in wait . . . ." We presume the jury understood and followed its instructions. (*Sanchez, supra*, 26 Cal.4th at p. 852.)

---

[6]     For this same reason, we reject Villalobos's contention that the jury may have found that he merely "intended to assist Fernandez in imposing gang discipline" and that murder "could be a natural and probable consequence of gang discipline."

13

Relatedly, Villalobos contends that the jury was not instructed "that Fernandez's mental state could ***not*** be imputed to Villalobos." However, the jury was directed to "decide separately whether each of the defendants is guilty or not guilty" (CALJIC No. 17.00) and to "decide separately as to each of the defendants the existence or nonexistence of each special circumstance alleged in this case" (CALJIC No. 8.80.1). We again assume the jury understood and complied with these clear instructions. (*Sanchez, supra*, 26 Cal.4th at p. 852.)[7]

Next, Villalobos asserts that CALJIC No. 3.00 may have permitted the jury to impute malice to him. He relies on *People v. Nero* (2010) 181 Cal.App.4th 504, in which a different panel of this court reversed a judgment of conviction based on confusion rooted in the "equally guilty" language in that instruction. *Nero* is inapposite. While deliberating, the jury in *Nero* asked the court if an aider and abettor of murder could be convicted " 'at a lower level' " than a principal. (*Id.* at p. 519.) The trial court then "reread, twice, CALJIC No. 3.00, which states: 'Each principal, regardless of the extent or manner of participation, is *equally guilty.*' " (*Ibid.*) The appellate court reasoned that the trial court "improperly foreclosed" the jury from finding the aider and abettor guilty of "a lesser degree or offense," even though "other instructions might have given them that option . . . ." (*Id.* at pp. 519–520.) Unlike in *Nero*, the jury in this case expressed

---

[7]     Villalobos also contends that the jury may have imputed malice to him because he had a different motive from Fernandez. However, the jury was properly instructed that "[m]otive is not an element of a crime." (CALJIC No. 2.51.) Whether Villalobos had a different motive than Fernandez is therefore irrelevant to our analysis.

14

no confusion over any instruction, nor did the trial court improperly foreclose the jury from considering any valid verdict.

Relatedly, Villalobos argues that the jury's special circumstance findings should not preclude his eligibility for resentencing because *Nero* reflected a change in the law on the aider and abettor standard. (*Strong, supra,* 13 Cal.5th at p. 721 [special circumstance findings do not preclude a petitioner from making a prima facie case for resentencing when the applicable law changed after his or her conviction].) However, six years after *Nero* was decided, our Supreme Court held that the " 'equally guilty' " language in CALJIC No. 3.00 "generally stated a correct rule of law," and distinguished *Nero* (as we have, *ante*) as a unique case involving an improper trial court response to clear jury confusion. (*People v. Johnson* (2016) 62 Cal.4th 600, 640–641.) Thus, *Nero* did not represent a change in the law.

Finally, Villalobos argues that the trial court was required to accept as true the allegations in his form petition for resentencing. Our Supreme Court has clarified that at the prima facie stage, " ' "the court takes petitioner's *factual* allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her *factual* allegations were proved." ' " (*Lewis, supra,* 11 Cal.5th at p. 971, italics added.) But where a petitioner "merely states the legal conclusion that he could not now be convicted of murder because of changes made to the law of murder under Senate Bill No. 1437," and the record of conviction conclusively refutes that assertion, the petition may be denied at the prima facie stage. (*People v. Pickett* (2023) 93 Cal.App.5th 982, 989, review granted Oct. 11, 2023, S281643.) Here, Villalobos submitted a form petition alleging that he could not presently be convicted of

15

murder because of changes to sections 188 and 189, without elaboration or factual support.  As we have discussed, the record of conviction conclusively refutes Villalobos's allegations, and therefore he is ineligible for resentencing as a matter of law.

## DISPOSITION

The order denying Villalobos's petition for resentencing is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


BERSHON, J.*


We concur:


EDMON, P. J.


ADAMS, J.

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.